Chief Justice Robertson
a eh venal the Opinion of the Court.
In 1880, the Executor of Marais Roby obtained a judgment against Robert Turner for $1220, in an action of covenant on the following writing:
“From papers presented me this day bv Mr. Marcus Roby now of Georgia, where he and mvself “was bound — via;. One note in favor of Benj. “Wilkerson for $859 on interest, from the 29th of “February, 1807, until this dav — one note in favor “Joshua Calloway, «en’r for $100, one other note “for $85 in favor of said CoPo vnv with interest “from the 19th of February, '898 until this dav— “one in favor of said Mar-us Rohv, E«q for $6 44 “with interest from the 11th Mwn*t. 1806 — one “judgment in favor of Steuben G Heard for $260, “with interest from the 7fb January, 1809 — in all “amounting to $784 59, which appears tp lie a cor“rect statement after taking out $867 50 acknowledged by Mr. Rohv to have been naid bv Joseph “Turner — which shall be discharged in equal annual “payments until paid, if not previously settled and “paid by Doctor Wiliam burner or Joseph Turner, “this 2nd day of June, 1819.
“.R TURNFJ .,s
r After verdict on a writ of enoniry of damages the defendant in the action, now plaintiff in error, move.d in arrest of judgment, insisting, as he now insists, that the writing sued on, did not. import a covenant to pay Rohv anv thing, and that even if it did the verdict was for a larger stun than the Jury had a right to assess.
The writing is not as precise or formal as the written memorials of contracts usually are, or as miriit be necessary to show, at once and with perfect certainty, the whole object and intention of the parties. But we feel no difficulty in deciding Hint it is in fact and in local effect, a contract by Turner to pay money to Roby. It acknowledges that Rob^r *210 had presented to Turner a judgment and certain nates in which thev had been bound in Georgia,' and a small note from, Turner to Rohv; hence the inference is plain that the joint notes had been taken up hy and in the possession of Rohv, and we may also infer that the judgment had . l -o been discharged by him, and that nothing had been contributed by the plaintiff in error excepting the $367 50 admitted to have been paid bv Joseph Turner. This latter inference, more liable to doubt than the first, is fortified by the fact that one of tfie notes was payable to Roby himself, and that, nevertheless, that note and the judgment and other notes were all included alike in the calculation and did with their accruing interest, amount in the aggregate, to about $724 after deducting the $367 paid by Joseph Turner, if that sum had been (as we may presume) paid for the plaintiff in error by his friend or agent, five or six years prior to the date of the covenant.
Here is then a direct acknowledgment by Turner-that he owed Roby, and the items constituting the foundation of his indebtedness and enumerated and described for the purpose of preventing future con-. troversy and of saving the trouble of any other settlement — and after thus ascertaining the amount due, Turner covenanted to pay it. — when he said — '■'■which •shall be discharged in equal annual payments,” §c— What did he mean? To whom was he to pay? and what was he to pay? He was to pay to Roby — 1st because Roby had paid the original debts, as shewn by the production of the notes, &o. — 2nd because the note from Turner to Roby was certainly to be paid to the latter, and that note and the other items ■enumerated in the settlement seem to have been included, in the same manner, in the estimate. 3rd If the intention had been to make payment to the original creditors, Robv had no authority to agree for thepi that they would receive payment in annual instalments, and, as already suggested, the production of the notes was evidence that they liad been paid off. Then what amount was to he paid by Turner to Roby? If they had been both principal obligors the covenant would bind Turner to pay only one half of $724 59: but some of the foregoing considerations *211 tend to shew that Roby was only the surety of Tnrner, and wneu the latter said “wmoh snail be dtscharged”(umnediateiy after acknowledging a balance of $724 59) lie should he understood, according to the literal and grammatical import of the covenant, to allude to tne $124 59, the only antecedent to which there could have been any pioper or intelliglide reference.
'^anUs^o*3 pay(acer« tain sum) in annual in-seal .¡«.its, do* C1<*ei* t,,a<the he paidahcnjld. divided-in. :otw.° equal instalments, payable in date ol the covenant.
Wl11 inle' rest accrue on either of such instalments uatil tbey be' payable 6 an ‘
Denny and Jiurdin for plaintiff) Crittenden for defendant.
_ As the wiiole amount was to have been paid in annual mstaiuients, witnout furmei soeciiication, the only sensible or practicable constnu tion would distribute the payment of #724 5ti into two equal stahnenls ot one and two s ears from tne date of the , , covenant.
The declaration was properly drawn according to the foregoing consti muon anu eliect ol the covenant, and contains an averment mat neither Doctor i'urner tior Josepn Turner nor tne pl.uuiiff in error had ever paid tne amount covenanted to oe paid or any part Oi it. Tne declaration ts ineretore good.
But the verdict is lor more than the Jury . . „ , i . i rigut to assess. Wnatever may nave been the actual intention ol the parties, tne iegal eifect of the-covenant is that interest should not accrue on tne amount of either instalment until it became due and payable: and thus calculating the intere.-t. tne gross amount due at the time of tlie verdict was less man $1220.
Whereupon the judgment for $1220 is erroneous - — and must be reversed, and the cause must üe remanded for a new trial.